## M. E. KRAFT EXCAVATING AND GRADING COMPANY, INC. v. BARAC CONSTRUCTION COMPANY AND OTHERS.
## H. W. FRIDLUND, ARCHITECT, INC., d.b.a. H. W. FRIDLUND, ARCHITECT, INTERVENING DEFENDANT.

156 N. W. (2d) 748.

February 16, 1968—No. 40,432.

*Moore, Costello & Hart* and *William M. Beadie,* for appellants.
*Carlsen, Greiner & Law,* for respondent.

NELSON, JUSTICE.

Appeal from a judgment of the District Court of Hennepin County.

This action, a mechanics lien foreclosure, was commenced by M. E. Kraft Excavating and Grading Company, Inc., against Barac Construction Company, Lyman L. Phelps, Martha M. Phelps, Alexander M. Barac, L. H. Bolduc Company, Inc., Jesco, Inc., St. Paul Foundry & Manufacturing Company, and Knutson Company as defendants.

The facts may be stated as follows: Alexander M. Barac and Lyman L. Phelps, hereinafter referred to as Barac and Phelps, and at times collectively as owners, entered into purchase agreements with five different individuals to purchase six adjacent lots on which they expected to build an apartment building. They consummated the purchase of the lots in May and June of 1962 with the proceeds of a $100,000 mortgage loan obtained from defendant Knutson Company.

Before consummating the purchase, Barac and Phelps contacted the Barac Construction Company relative to acting as contractor for construc-

tion of the building. The contractor engaged the services of the intervening defendant-appellant, H. W. Fridlund, Architect, Inc., to design a building and develop preliminary plans. The normal practice of the architect in designing or planning a building was to obtain a survey of the site, making clear the boundaries, the contours, and the location of sanitary facilities, curbs, sidewalks, and trees. A survey was necessary also to establish required setbacks and determine the area of the site for zoning requirements, so either the contractor or the architect hired a surveying firm, Egan, Field & Nowak, to survey the six-lot tract. This was done on January 24 and 25, 1962. Following the survey iron stakes were driven flush to the ground at the four corners of the six-lot tract, although it appears that at one or more of the four corners the surveyors merely located iron stakes from a previous survey. The only other visible work the surveyors performed on the site was placing wooden markers at the four corner monuments. The record does not show how long the wooden markers remained standing or visible. The architect could not state whether the wooden markers were visible in February 1962, when he was on the site, and the surveyors could not state whether the wooden markers were standing and visible on May 4, 1962, when Barac and Mr. and Mrs. Phelps signed their mortgage deed in favor of the Knutson Company; on July 10, 1962, when the mortgage was recorded; or in October 1962, when the surveyors did additional work on the site.

In January 1962 there were situated upon the six-lot tract several residences. All but one of the residences were occupied. At the time of closing the purchase, some of the residences were still occupied. When the mortgage was recorded, there were no recently completed improvements on the tract, nor were there any improvements in the process of construction.

At the direction of the contractor the architect proceeded with the designing of a building. These first preliminary drawings and plans were completed in late February or early March 1962. Certain revisions were made in April 1962. One of the reasons for preparing the preliminary plans was to provide owners something they could use to negotiate mortgage financing, so the plans were in essence art work.

An absolute prerequisite to the construction of the building was the

obtaining of adequate mortgage financing, since Barac and Phelps were not going to finance the apartment project with their own money. They estimated that it would require a permanent mortgage of $1,050,000. The preliminary plans and specifications, as well as anticipated operating statements, were necessary to obtain a mortgage commitment.

In late February or early March 1962, Phelps contacted Knutson Company relative to borrowing $100,000 in order to purchase the six lots, the loan to be secured by a mortgage on them. With this mortgage application, a copy of the January survey was delivered to Knutson Company for purposes of title examination, and prints of the preliminary drawings were also given it for the purpose of negotiating the permanent mortgage. On May 4, 1962, Barac, Phelps, and Mrs. Phelps executed and delivered to Knutson Company their negotiable first mortgage note for $100,000, secured by a first mortgage on the six lots. They used the proceeds of the loan to acquire the lots. On July 10, 1962, the deeds conveying title to Barac and Mr. and Mrs. Phelps were duly recorded. On the same day the mortgage was recorded.

During this period Knutson Company had no knowledge that the architect had not been paid for his services. Since Knutson Company was a mortgage broker, at Phelps' request it attempted to get the permanent mortgage commitment the owners sought, although it gave no assurance that it could do so. By the fall of 1963 Knutson had been unable to get the commitment and the owners attempted to obtain one elsewhere.

At the time the purchase money mortgage was executed, the architect's preliminary plans called for a six-story high-rise apartment building. To furnish satisfactory access for the tenants the owners acquired an adjacent lot in July 1962 and the plans were revised to incorporate that lot into the project site. In August 1962 the architect finally started on the working drawings.

By the time the architect's drawings were finalized, the owners had succeeded in obtaining a commitment for the permanent financing from the Eberhardt Company. The contractor thereafter obtained a building permit from the city of Minneapolis, and in June 1963, M. E. Kraft Excavating and Grading Company, Inc., a subcontractor of the contractor, commenced removing the structures standing on the seven-lot site. There-

after the other subcontractor defendants-appellants began furnishing labor and materials to the project pursuant to contracts with the contractor.

Originally, the owners had anticipated that the mortgage broker, on the basis of a permanent mortgage commitment, could borrow interim construction money from a bank. On August 11, 1963, as an accommodation to the owners the Knutson Company permitted a shell mortgage in the amount of $1,125,000 to be placed on the seven-lot site, with the plan that this mortgage could be assigned to the permanent investor. The shell mortgage was never used. While construction was proceeding, Phelps continued unsuccessfully to attempt to obtain interim construction financing. Failing to obtain construction money, the contractor was unable to make progress payments to the lien claimants and construction stopped in early 1964.

Subsequently, defendants-appellants filed their mechanics liens against the property. There is no question as to the validity of the liens nor of the propriety of their amounts. No part of the $100,000 note of Barac and Mr. and Mrs. Phelps to the Knutson Company was paid when due May 3, 1963. Thereafter, in the summer of 1964, Knutson Company foreclosed its mortgage and purchased the property at the sheriff's sale for $100,000 on August 18, 1964. The year of redemption expired without a redemption and Knutson Company now holds title to the six lots.

The principal issue at the trial was the priority of the mechanics liens as against the mortgage lien of Knutson Company. Defendants-appellants herein contended their liens were entitled to priority over the mortgage on the theory that the actual and visible beginning of the improvements occurred prior to July 10, 1962, when the mortgage was recorded, or because Knutson took the mortgage with notice of the survey and the architect's work on the preliminary plans and specifications. The trial court awarded judgment to plaintiff and defendants-appellants herein, as mechanics lienholders, against the contractor for the amounts stipulated as the reasonable value of their claims, but declared that Knutson's title was free of any right, title, lien, or claim of plaintiff and defendants-appellants. The lien claimants appealed from the judgment.

The issues involved in this appeal are (1) whether a boundary survey

of a six-lot tract ordered by a contractor or its agent and made for the purposes of possible acquisition of the six-lot tract and to provide information for an architect to prepare preliminary plans and specifications for a proposed improvement constitutes the "actual and visible beginning of the improvement" within the meaning of Minn. St. 514.05, where in the course of the survey four boundary corners of the tract are staked; and (2) whether a mortgagee who takes and records a purchase-money mortgage with actual knowledge that survey work has been performed and that preliminary plans and specifications have been prepared for a contemplated improvement of the property has priority over mechanics liens which subsequently arise out of the subsequent construction of the improvement.

■ Mechanics liens are purely creatures of statutes and the rights of the parties are governed by the language of the statutes. Section 514.01 so far as material to the facts herein reads as follows:

"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner, shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution * * *."

Section 514.05 provides when a mechanics lien comes into being and attaches. It reads as follows:

"All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, *no lien shall attach prior to the actual and visible beginning of the improvement on the ground,* but a person having a contract for the furnishing of labor, skill, material, or machinery for such improvement, may file for record with the register of deeds of the county within which the premises are situated * * * a brief

statement of the nature of such contract, which statement shall be notice of his lien for the contract price or value of all contributions to such improvement thereafter made by him or at his instance." (Italics supplied.)

The statutory words "the actual and visible beginning of the improvement on the ground" have a definite meaning. This court has interpreted them to mean that in order for a mechanics lien to have priority over a mortgage duly recorded, the material or labor furnished for the improvement must represent an actual beginning of the improvement *on the ground* and it must be visible; that is, it must be visible to the extent that a person using reasonable diligence in examining the premises must be able to see it. It is clear from the statutory language as interpreted by our decisions that whether one has the status of a bona fide mortgagee without notice depends upon whether or not there was an actual and visible beginning of the improvement *on the ground* prior to the recording of the mortgage.

Appellants herein contend that Knutson had actual notice of the boundary survey of the six-lot tract ordered by the contractor or its agent and of the architect's preparation of preliminary plans and specifications for the proposed improvement and that both the survey and the preliminary plans and specifications constituted the actual and visible beginning of the contemplated improvement on the ground so as to charge Knutson with notice of the commencement of the actual construction which later followed on the premises.

The statement of Mr. Justice Mitchell of this court with respect to architect's services contained in Wentworth v. Tubbs, 53 Minn. 388, 395, 55 N. W. 543, 544, is appropriate with respect both to the architect's services and the survey herein:

"* * * [I]t would be very unjust if the land could be afterwards swallowed up by mechanics' liens for work which had not been commenced on the ground, and of which consequently one who might buy the property or take a mortgage upon it had no notice or means of knowledge when he took his deed or his mortgage."

Appellants contend that Knutson had actual knowledge of the architect's preliminary work and the survey and should therefore be charge-

able with notice even though there was no actual or visible improvement on the ground. Such contention was rejected in Landers-Morrison-Christenson Co. v. Ambassador Holding Co. 171 Minn. 445, 448, 214 N. W. 503, 504, 53 A. L. R. 573, 576, wherein it was held:

"All liens attach from the time the first item of material or labor is furnished on the premises for the beginning of the improvement. As against the owner a lien may attach although no material or labor has been furnished on the ground. Lamoreaux v. Andersch, 128 Minn. 261, 150 N. W. 908, L. R. A. 1915D, 204.

" 'As against a bona fide purchaser, mortgagee or incumbrancer without notice, however, *no lien shall attach prior to the actual and visible beginning of the improvement on the ground.*' " (Italics supplied.)

In Erickson v. Ireland, 134 Minn. 156, 158, 158 N. W. 918, 919, we said:

"It is well settled in this state that a mortgage given to secure future advances, which advances are in fact later made, has priority over mechanics' liens attaching after the mortgage is given, but before the advances are made, where the making of the advances was obligatory upon the mortgagee under the terms of this contract with the mortgagor."

The Erickson case is authority for the proposition that, while an architect may have a lien for his services against the owner, liens filed subsequent to a mortgage, such as we have here, do not attach from the time the architect commences his work or the services are completed because his work does not constitute an actual and visible beginning of the improvement on the ground.

In Reuben E. Johnson Co. v. Phelps, 279 Minn. 107, 114, 156 N. W. (2d) 247, 252, involving the same owners but other mortgagees and lien claimants, Mr. Chief Justice Knutson, commenting on what constituted the lienable items, had this to say:

"Here, too, the original survey was not an improvement. It was made only to mark the perimeters of the lots for division at the request of the two insurance companies which were committed to purchase the mortgages on the premises when the improvement was completed. It would

not be a lienable item so as to permit liens to attach from the date of the survey.

"If a preliminary survey of this kind were to be held an actual and visible beginning of the improvement on the ground so that all liens filed thereafter would have priority over a mortgage given to secure advances for completion of the improvement, it is safe to say that it would be difficult, if not impossible, to procure financing for any such improvement. We do not believe the legislature could have intended such a result.

"In addition to the survey stakes marking the perimeters of the lots, three or four grade stakes were apparently placed on the premises, but the testimony of Schumacher's executive was that they were not visible. It is conceded that the property was covered with weeds and brush about two feet high. Even appellants' witness Snyder testified that, while he found these grade stakes, he would not have seen them had they not been pointed out to him. Under these circumstances it must be held that they did not constitute an 'actual and visible beginning of the improvement on the ground' so as to charge the mortgagee with notice of the commencement of the improvement."

Under the holding in Reuben E. Johnson Co. v. Phelps, *supra,* we are bound to hold upon the record herein that neither the survey nor the services of the architect in preparing plans for improvement of the premises constituted an actual and visible improvement on the ground so as to permit a lien filed subsequent to Knutson Company's mortgage to attach as of the date of the survey or as of the date of the commencement of the services of the architect, as against a bona fide mortgagee without notice.

■ Furthermore, as was held in Reuben E. Johnson Co. v. Phelps, *supra,* a few grade or fill stakes which are not readily visible do not constitute such an actual and visible beginning of the improvement on the ground as will permit liens filed after a mortgage to attach as of the date of the placing of such stakes against a bona fide mortgagee without notice. The same rule applies to the wooden markers placed at the corners of the tract during the survey. And knowledge of a contemplated improvement or of the facts that the architect's preliminary plans for the improvement and a survey have been made does not constitute an actual and visible

beginning of the improvement on the ground so as to permit liens filed subsequent to the mortgage to attach as of the time of such preliminary plans or survey. Reuben E. Johnson Co. v. Phelps, *supra.*

An order of affirmance must follow.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.