KIRKWOLD CONSTRUCTION
COMPANY, Respondent
(C1–92–1227),

v.

M.G.A. CONSTRUCTION, INC.,
et al., Defendants,

Minnesota Valley Surveyors, Inc.,
Respondent (C1–92–1227),

Ulteig Engineers, Inc., Respondent
(C1–92–1227),

Turner Excavating Company,
Respondent, Appellant,

Miller and Schroeder Investments,
Corporation, Petitioner,
Appellant,

Cherrier Land Surveyors, Inc.,
Respondent (C1–92–1227),

Specialty Systems, Inc., Respondent
(C1–92–1227),

and

MINNESOTA VALLEY SURVEYORS,
INC., Respondent (C1–92–1227),

v.

HOLIDAY STATIONSTORES, INC.,
et al., Petitioners, Appellants,

Duckwood Crossings, Inc.,
et al., Defendants,

Ulteig Engineers, Inc., Respondent
(C1–92–1227),

Turner Excavating Company, Respondent,

and

ULTEIG ENGINEERS, INC., third-party
plaintiff, Respondent (C1–92–1227),

v.

M.G. ASTLEFORD COMPANY, INC.,
et al., Third–Party Defendants.

Nos. C1–92–1227, C5–92–1764.

Supreme Court of Minnesota.

March 11, 1994.

Bradley N. Beisel, Scholle & Beisel, Minneapolis, for appellants.

James D. Hoeft, Barna, Guzy & Steffen, Ltd., Coon Rapids, for Cherrier Land Surveyors, Inc.

Loren E. Gross, Minneapolis, for Turner Excavating Co.

Jack Neveaux and Louis B. Oberhauser, Oberhauser & Neveaux, P.A., Wayzata, for Specialty Systems, Inc.

Dennis P. Moriarty, Jaspers, Moriarty & Walburg, P.A., Shakopee, for Kirkwold Const.

William Clelland, Carson & Clelland, Minneapolis, for Ulteig Engineers, Inc.

Clinton McLagan, St. Paul, for MN Valley Surveyors.

James T. Swenson, Mackall, Crounse & Moore, Minneapolis, for MN Land Title Assoc. and Mortg. Bankers Assoc. of MN, amicus curiae.

Kathleen O'Connor, St. Paul, for MN Soc. of Professional Engineers, amicus curiae.

## OPINION

KEITH, Chief Justice.

The question to be decided in this case is whether the services performed by engineers and surveyors are entitled to lien priority under Minn.Stat. § 514.05 even though the interest of a purchaser in good faith and a mortgagee were recorded prior to the actual and visual beginning of the improvement on the ground. We affirm the Court of Appeals.

Charles B. Faegre, in early 1989, formed a wholly owned corporation, Duckwood Crossings, Inc. (Duckwood) to develop a retail shopping mall on three lots located in Dakota County. In preparation for the sale of one lot to Holiday Stationstores, Inc. (Holiday) and the closing on two mortgages to Miller and Schroeder Investments Corporation (Miller) to complete the purchase of the other lots, Duckwood hired Minnesota Valley Surveyors, Inc. (MN Valley) and Ulteig Engineers, Inc. (Ulteig) to perform surveying and engineering services for the development. MN Valley began work on February 20, 1989, and Ulteig began work April 10, 1989. Neither company was fully paid for its services by Duckwood.

The closing on the sale of the lot to Holiday and the execution of the two mortgages to Miller were completed by October 30, 1989. The trial court found that Holiday and Miller knew of the work performed by Ulteig and MN Valley and knew or should have known that they had not been paid by Duckwood. The first actual and visible construction on the ground of the proposed shopping center began November 2, 1989. Liens were filed subsequent to November 2, 1989, by MN Valley, Ulteig, and various other parties who contributed labor or materials to the project. When Duckwood failed to meet its leasing obligations, Miller foreclosed and ultimately took title to its portion of the property. This litigation was commenced to establish lien priority.

The trial court held that, under Minn.Stat. § 514.05, the interests of Holiday and Miller

were subordinate to the liens of MN Valley, Ulteig, and all other parties who contributed labor and material to the project after November 2, 1989. The Court of Appeals partially reversed the trial court, holding that under the statute Holiday and Miller had priority over the liens of all claimants other than MN Valley and Ulteig, 498 N.W.2d 465. This appeal deals only with the priority claims of MN Valley and Ulteig.

A review of the history of Minn.Stat. § 514.05 is helpful. Prior to 1974, surveyors and engineers were not entitled to mechanics' liens in Minnesota. *See Dunham Assoc., Inc. v. Group Investments, Inc.,* 223 N.W.2d 376 (Minn.1974); *Anderson v. Breezy Point Estates,* 168 N.W.2d 693 (Minn.1969). The legislature in 1974 included the services of engineers and surveyors in the amendment to Minn.Stat. § 514.01 which read, in relevant part:

> Whoever *performs engineering or land surveying services with respect to real estate, or* contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, * * * shall have a lien upon the improvement, and upon the land on which it is situated * * *.

Laws of Minnesota for 1974, c 381, s 1.

In addition, the following amendment was made to Minn.Stat. § 514.05:

**WHEN LIEN ATTACHES; NOTICE.** All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for the improvement, may file for record with the register of deeds of the county within which the premises are situated, or, if claimed under section 514.04,

with the secretary of state, a brief statement of the nature of such contract, which statement shall be notice of his lien. *Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises.*

*Id.* at s 2.

In 1986, the Court of Appeals interpreted this amendment to mean that a visible staking or grading of property could constitute the first visible improvement, and the priority of all mechanics liens could therefore attach with the performance of surveying or engineering services. *R.B. Thompson, Jr. Lumber Company v. Windsor Development Corporation,* 383 N.W.2d 362, 366–67 (Minn. App.1986). This case conflicted with a long line of cases which had held that the actual or visible improvement must be an improvement *on the ground. See Reuben E. Johnson Co. v. Phelps,* 156 N.W.2d 247, 251 (Minn.1968); *Erickson v. Ireland,* 134 Minn. 156, 158 N.W. 918, 920 (1916). In the *R.B. Thompson* case, the court expressed concern regarding the ability of all lien claimants to tack onto the priority of engineers and surveyors, stating:

> By holding that housing contractors and other lien claimants may tack their liens back to any visible work done on a site, even if done *years* before the actual erection of the building, these cases inject great uncertainty into the bar and the industry.

*R.B. Thompson,* 383 N.W.2d at 367. The court's concern in these cases was not with the priority of the lien of the surveyor or engineer, but with the ability of all other claimants who provided work or material to tack on to that priority.

■ In 1987, the legislature again amended Minn.Stat. § 514.05 by adding the words *actual or record* before the word notice and the word *only* in the second sentence of Subd. 1 and by striking the last sentence of Subd. 1 and adding a new Subd. 2. Currently, the statute reads as follows:

*Subdivision 1.* **Generally.** All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without *actual or record* notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for *the* improvement, may file for record with the county recorder of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of the contract, which statement shall be notice of that person's lien *only.*

*Subd. 2.* ***Exception.*** *Visible staking, engineering, land surveying, and soil testing services do not constitute the actual and visible beginning of the improvement on the ground referred to in this section. This subdivision does not affect the validity of the liens of a person or the notice provision provided in this chapter and affects only the determination of when the actual and visible beginning of the improvement on the ground, as the term is used in subdivision 1, has commenced.*

Minn.Stat. § 514.05 (1992) (emphasis added).

Holiday and Miller argue that these amendments were intended to maintain liens for services performed by engineers and surveyors but were not intended to change prior case law which held that as against a bona fide purchaser or mortgagee, no mechanics' lien establishes prior to the actual and visible improvement to the land. They interpret "actual or record notice" to refer to notice of an existing lien which can arise two ways: (1) if the lien is recorded, or (2) if the lien is filed after the visible commencement of the improvement, as happened in this case.

MN Valley and Ulteig argue that the 1987 amendments give priority to liens which attach due to services performed by engineers and surveyors when the bona fide purchaser or the mortgagee has *actual knowledge* of the work performed. They argue these amendments were adopted to prevent other mechanics liens from tacking onto the priority of surveyors' and engineers' liens. In effect, the amendments create a system of split priority.

■■■ Since mechanics' liens were established by statute, the Court is limited to interpreting the meaning of the statute. The plain language of the statute should not be disregarded if the meaning is clear. Minn. Stat. § 645.16 (1992). In this case, the plain language of the statute indicates that only a bona fide purchaser or mortgagee *without actual notice* shall be given priority over mechanics liens. It would be stretching this phrase far beyond its common meaning to hold that *actual knowledge* did not qualify as "actual notice." The trial court found that Appellants knew that MN Valley and Ulteig had performed lienable work, and knew or should have known that they had not been paid. Under these circumstances, Appellants had actual knowledge and, therefore, "actual notice" of the possibility that a mechanics lien would attach.

■ Appellants argue, however, that "actual notice" refers to notice of an existing lien which may arise only with the beginning of the visible improvement on the ground. This interpretation would render the phrase meaningless. A mortgagee with actual notice of an existing lien arising out of the visible improvement would already be subject to a lien because all liens would have attached with the visible improvement. Whenever possible, this Court must interpret a statute so as to give effect to all of its provisions. Minn.Stat. § 645.17(2) (1992).

■ Since 1974, the legislature has treated engineers and surveyors differently from others who have a right to a mechanics' lien. Minn.Stat. § 514.01 provides that once engineering and surveying services with respect to the land are performed, the engineer or surveyor shall have a lien upon the land. Persons other than engineers or surveyors have a lien on the land once they "contribute to the improvement of real estate by per-

forming labor, or furnishing skill, material, or machinery for any of the purposes hereinafter stated * * *." Minn.Stat. § 514.01 (1992). Engineers and surveyors perform their services and qualify for a lien. Others must contribute to the improvement of real estate to qualify for a lien.

The 1987 amendments to § 514.05 did not change the priority of engineering or surveying services as against a bona fide purchaser or mortgagee without actual or record notice. Minn.Stat. § 514.05, subd. 2 (1992). The amendments simply prevented other lien claimants from tacking onto the priority of engineers and surveyors. There is no language in the amendments which subordinates the lien of the engineer or surveyor to the interest of persons with prior actual notice of the services provided by these professionals.

We conclude that the plain meaning of Minn.Stat. § 514.05 as amended, provides that if a bona fide purchaser or mortgagee has notice of lienable work performed by engineers or surveyors, its interest is subordinated to these liens for the work completed by the engineers and surveyors up to the time of the actual and visible improvement on the ground.

The Court of Appeals is affirmed.