RIVERVIEW MUIR DORAN,
LLC, Respondent,

v.

JADT DEVELOPMENT GROUP,
LLC, et al., Respondents,

First Choice Bank, Respondent,

Darg, Bolgrean, Menk, Inc.,
et al., Defendants,

and

First Choice Bank, Respondent,

v.

JADT Development Company,
LLC, et al., Respondents,

Riverview Muir Doran,
LLC, Respondent,

Darg, Bolgrean, Menk, Inc., Defendant,

KKE Architects, Inc., Appellant,

and

KKE Architects, Inc., Appellant,

v.

JADT Development Company,
LLC, Respondent,

First Choice Bank, et al., Respondents,

Darg, Bolgrean, Menk, Inc.,
et al., Defendants.

No. A09–312.

Supreme Court of Minnesota.

Nov. 4, 2010.

Ryan R. Dreyer, Kathleen M. Ghreichi, Morrison, Fenske & Sund, P.A., Minnetonka, MN, for respondents Riverview Muir Doran, LLC, and First Choice Bank.

Larry D. Espel, John M. Baker, Robin M. Wolpert, Greene Espel, P.L.L.P., Minneapolis, MN, for appellant KKE Architects, Inc.

Bradley N. Beisel, David J. Krco, Beisel & Dunlevy, P.A., Minneapolis, MN, for amicus curiae Minnesota Land Title Association.

Mark A. Bloomquist, Meagher & Geer, P.L.L.P., Minneapolis, MN, for amici curiae American Council of Engineering Companies of Minnesota and Minnesota Society of Professional Surveyors.

Michael B. Lapicola, Faegre & Benson LLP, Minneapolis, MN, for amicus curiae American Institute of Architects Minnesota.

Amanda M. Daeges, Eden Prairie, MN, for amicus curiae Minnesota Bankers Association.

OPINION

DIETZEN, Justice.

◼ In this consolidated action, appellant KKE Architects, Inc. (KKE), seeks to foreclose its mechanic's lien, and respondents First Choice Bank and Riverview Muir Doran, LLC, seek to foreclose their mortgages on property that is part of a housing project located in Hennepin County. Respondents moved for partial summary judgment, seeking a determination on the validity of the mechanic's lien as well as the priority of their mortgages. The district court entered judgment in favor of KKE, concluding that respondents had actual notice of KKE's mechanic's lien under Minn.Stat. § 514.05 (2008), and therefore the lien has priority over the mortgages. The court of appeals reversed, and we granted review. We conclude that respondents' mortgages have priority over KKE's mechanic's lien, because respondents did not have actual notice of an existing lien that was unpaid at the time they recorded their mortgages, and therefore the lien did not attach against respondents. Thus, we affirm the court of appeals.

The material facts are undisputed. JADT Development Group, LLC (JADT), acquired property, Parcels I, II, and III, in Hennepin County to construct condominium units known as River View Homes (Project). At the request of JADT, KKE performed architectural services consisting of design development services and construction document services for the Project. On January 17, 2003, KKE made its first item of contribution to the improvement of Parcel I. KKE did not file notice of its mechanic's lien and performed the work for JADT without a written contract.

On March 22, 2005, JADT granted respondents separate mortgages for the total amount of $20,358,550 against Parcels I, II, and III. The mortgages were recorded on March 23, 2005.

Before the closing, JADT had provided respondents and respondents' closing agent, Chicago Title Insurance Co., with 27 invoices issued between June 30, 2003, and January 31, 2005, from KKE to JADT for architectural services totaling $97,139.33 for the Project. Some of the invoices identified the percentage of work that had been completed to date for the Project.[1] Respondents and Chicago Title also had a copy of a private placement memorandum for the Project that identified, among other things, KKE as the architect for the Project.

Chicago Title used some of the loan proceeds to pay KKE for its work. On March 23, 2005, Chicago Title issued a check payable to KKE for $97,139.33, which was the total amount of the invoices furnished by JADT. According to the closer's affidavit, Chicago Title took these actions to ensure "the first priority position of First Choice Bank's mortgage and the second priority position of Riverview Muir Doran, LLC." Along with the check, Chicago Title mailed to KKE a Receipt and Waiver of Mechanic's Lien Rights (waiver document). On the waiver document, Chicago Title indicated that the payment was partial. Although the check amount was consistent with the total

amount of the invoices presented at the closing, the check amount was less than the total value of services rendered by KKE up to the date the mortgages were recorded. There is nothing in the record to indicate, however, that respondents were aware of any other unpaid work performed by KKE for the Project. KKE signed the waiver document and returned it to Chicago Title on April 4, 2005. KKE endorsed and cashed the check.

On November 27, 2006, KKE recorded and served upon JADT a mechanic's lien for $235,996.34 for KKE's work on the Project.[2] On December 29, 2006, KKE recorded and served upon JADT an amended mechanic's lien for $358,028.34.[3]

JADT defaulted on its mortgages to respondents and did not satisfy the unpaid balance owed to KKE.[4] Ground was never broken for construction of the planned condominiums. All work appears to have ceased when JADT defaulted on the mortgages. Accordingly, there was no actual and visible beginning of the improvement on the ground.

Riverview and First Choice commenced actions to foreclose their mortgages, and KKE commenced an action to foreclose its mechanic's lien. All three actions were consolidated by the district court. Subsequently, the parties filed a trial stipulation setting forth the facts admitted by the parties.

---

1. KKE's invoice dated January 31, 2005, indicated the percentage of work completed as 100% of conceptual design services, 100% of city approvals, 48.31% of design development and construction documents, and 4% of bidding/negotiation.

2. KKE completed its work on September 1, 2006, and timely recorded its mechanic's lien. *See* Minn.Stat. § 514.08 (2008).

3. KKE mistakenly included $11,905.89 for architectural services involving different property, and $281.98 for Project marketing plans, which are not lienable charges. Therefore, the unpaid balance for KKE's architectural services for the Project is actually $345,840.47.

4. JADT also defaulted on a third mortgage to Darg, Bolgrean, Menk, Inc., which is not at issue in this appeal.

Based upon the trial stipulation, respondents moved for partial summary judgment, seeking a determination that their mortgages had priority over the mechanic's lien. Respondents argued that they were bona fide mortgagees without actual notice of KKE's mechanic's lien within the meaning of Minn.Stat. § 514.05, and therefore their mortgages had priority over the mechanic's lien. The district court filed Amended Findings of Fact and Conclusions of Law and Order for Judgment,[5] which denied respondents' motion for summary judgment and granted partial summary judgment to KKE. The district court directed entry of judgment in favor of KKE pursuant to Minn. R. Civ. P. 54.02, ruling that respondents had actual notice of KKE's mechanic's lien within the meaning of Minn.Stat. § 514.05, and therefore KKE's mechanic's lien has priority over respondents' mortgages. The district court ordered that Parcel I be sold to satisfy KKE's lien.

In an unpublished opinion, the court of appeals reversed, concluding that Minn. Stat. § 514.05 requires that respondents have actual notice of an *unpaid* lien prior to the recording of their mortgages for the mechanic's lien to take priority. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* No. A09–312, 2009 WL 2928770, at *5 (Minn.App. Sept. 15, 2009). Because respondents had paid the outstanding KKE invoices in full at the time of the closing, the court of appeals concluded that they did not have actual notice of an unpaid lien prior to recording their mortgages, and therefore the mortgages

had priority over KKE's mechanic's lien. *Id.* Subsequently, we granted review.

## I.

KKE argues that respondents had actual notice of KKE's architectural work within the meaning of Minn.Stat. § 514.05, subd. 1, and therefore the mechanic's lien has priority. Section 514.05, subdivision 1, provides that as against a bona fide mortgagee "without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground." The parties dispute whether the statute refers to actual notice of lienable work, or actual notice of an existing lien that was unpaid.

We review a district court's summary judgment decision de novo. *See Kratzer v. Welsh Cos.,* 771 N.W.2d 14, 18 (Minn.2009). In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment. *Id.* Here, the material facts are undisputed,[6] and the question presented turns on the meaning of section 514.05, which is a question of law that we review de novo. *See Eischen Cabinet Co. v. Hildebrandt,* 683 N.W.2d 813, 815 (Minn.2004).

"Mechanics liens are purely creatures of statutes and the rights of the parties are governed by the language of the statutes." *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.,* 279 Minn. 278, 283, 156 N.W.2d 748, 751 (1968). The mechanic's lien statutes are set forth

---

5. Previously, the district court filed Findings of Fact, Conclusions of Law, and Order. Subsequently, KKE brought a motion to amend to include attorney fees, costs and disbursements, and prejudgment interest; the motion was granted.

6. The parties rely on the trial stipulation for the admitted facts and agree there are no genuine issues of material fact that would prevent summary judgment. We note minor discrepancies between the trial stipulation and the district court's amended findings of fact. In the event of a difference, we rely on the trial stipulation.

in Minn.Stat. ch. 514 (2008). Section 514.01 provides that whoever "contributes to the improvement of real estate by performing labor, or furnishing skill . . . shall have a lien upon the improvement, and upon the land on which it is situated." It is undisputed that architectural work constitutes a lienable service as defined in section 514.01. *See Korsunsky Krank Erickson Architects, Inc. v. Walsh,* 370 N.W.2d 29, 31 (Minn.1985); *see also Lamoreaux v. Andersch,* 128 Minn. 261, 268, 150 N.W. 908, 911 (1915); *Gardner v. Leck,* 52 Minn. 522, 531, 54 N.W. 746, 750 (1893); *Knight v. Norris,* 13 Minn. 473 (Gil.438) (1868).

▪ Section 514.05 governs when a mechanic's lien attaches and provides for potentially different dates of attachment depending upon whether the person is the owner of the property, or a purchaser, mortgagee, or encumbrancer. The first sentence of section 514.05 provides that a mechanic's lien generally attaches and takes effect against a property owner when "the first item of material or labor is furnished upon the premises." Minn.Stat. § 514.05, subd. 1.[7] Thus, as to an owner, a mechanic's lien attaches upon commencement of the work. *See M.E. Kraft,* 279 Minn. at 285, 156 N.W.2d at 752.

The second sentence—the sentence at issue here—applies to purchasers, mortgagees, and encumbrancers, and provides a different rule:

As against a bona fide purchaser, mortgagee, or encumbrancer without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground. . . .

Minn.Stat. § 514.05, subd. 1.[8] The parties agree that there was no actual and visible improvement on the ground and no record notice, but the parties disagree about whether respondents had actual notice. The crux of the dispute between the parties and the amici[9] in this case centers on the meaning of actual notice—specifically, what the phrase "without actual or record notice" in section 514.05 modifies.[10] KKE argues that "without actual notice" means without actual notice of lienable work. According to KKE, because respondents had actual notice that KKE had performed lienable work, KKE's lien has priority over the mortgages. Respondents argue that "without actual notice" means without actual notice of an existing lien that is unpaid. According to respondents, because they had paid all known, outstanding invoices of KKE at the time they recorded their mortgages, the lien never attached

7. The first sentence of section 514.05 is not at issue because this case involves mortgagees. The complete first sentence reads: "All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof." Minn.Stat. § 514.05, subd. 1.

8. The remainder of the sentence provides that a lien claimant may file and record with the County Recorder or Secretary of State, as provided by statute, "a brief statement of the nature of the contract [that] shall be notice of that person's lien only." Minn.Stat.

§ 514.05, subd. 1. It is undisputed that KKE did not file "a brief statement of the nature of the contract" and that KKE's lien was not recorded until 20 months after respondents had recorded their mortgages. Therefore, "record notice" is not at issue.

9. Amici curiae include American Council of Engineering Companies of Minnesota, Minnesota Society of Professional Surveyors, American Institute of Architects Minnesota, Minnesota Land Title Association, and Minnesota Bankers Association.

10. For ease of reference and since record notice is not at issue here, we will refer to the statutory language in section 514.05—"actual or record notice"—simply as "actual notice."

against them, and therefore their mortgages have priority over the lien.

We have construed the words "without notice" in earlier versions of the statute to mean without notice of an *existing* mechanic's lien. *See, e.g., Jadwin v. Kasal,* 318 N.W.2d 844, 849 (Minn.1982) (interpreting Minn.Stat. § 514.05 (1980)); *Reuben E. Johnson Co. v. Phelps,* 279 Minn. 107, 116, 156 N.W.2d 247, 253 (1968) (interpreting Minn.Stat. § 514.05 (1962)); *Landers–Morrison–Christenson Co. v. Ambassador Holding Co.,* 171 Minn. 445, 448, 214 N.W. 503, 505 (1927) (interpreting Gen. St.1923 § 8494). In 1987, the statute was amended to specify "without actual or record notice." Act of May 13, 1987, ch. 95, § 1, 1987 Minn. Laws 175, 175–76 (codified at Minn.Stat. § 514.05 (2008)). Thus, the amendments clarify that notice is limited to actual or record notice.[11] The 1987 amendments did not render our previous decisions as to the meaning of "without notice" obsolete. Therefore, in accordance with our prior cases, we conclude that "without actual notice" in section 514.05, subdivision 1, means without actual notice of an existing lien.[12]

We turn next to respondents' argument that "without actual notice" means without

11. KKE asserts that the term "bona fide" in Minn.Stat. § 514.05, subd. 1, means that "a mortgagee with actual knowledge of lienable services is charged with what it knew or should have known about the status of payment." Essentially, KKE argues that the words "bona fide" modify and are connected to the words "without actual ... notice" in section 514.05. According to KKE, once respondents had actual notice of lienable work that KKE had performed, respondents then had the duty to contact KKE and determine whether the work was complete and the lien fully paid. KKE bases this argument upon our cases under the Minnesota Recording Act, Minn.Stat. § 507.34 (2008), which have held that a purchaser with "either actual, implied, or constructive notice" of outstanding rights of others "is not a bona fide purchaser entitled to the protection of the Recording Act." *See Anderson v. Graham Inv. Co.,* 263 N.W.2d 382, 384 (Minn.1978) (interpreting the term "subsequent purchaser in good faith and for a valuable consideration" in the Minnesota Recording Act). We disagree with KKE's interpretation of "bona fide" mortgagee in section 514.05. The statutes use different language and serve different purposes. Moreover, reading an inquiry duty into section 514.05 would directly contradict the explicit "actual or record notice" language in the mechanic's lien statute. A bona fide mortgagee under section 514.05 simply means a mortgagee that has acquired its interest in the property in good faith and without fraud. *See Black's Law Dictionary* 186 (9th ed.2009) (defining "bona fide" as "[m]ade in good faith; without fraud or deceit" or "[s]incere; genuine"); *Johnson,* 279 Minn. at 113, 156 N.W.2d at 251 (interpreting "bona fide mortgagee" in section 514.05 to mean "good faith mortgagee").

12. The dissent interprets "without actual notice" to mean without actual notice of "the nature of the contract," citing the record notice provision in Minn.Stat. § 514.05, subd. 1. But we have interpreted "without actual notice" for over 80 years to mean without notice of an existing lien. The dissent's position is premised on the view that "if there is no contract, there is no right to payment, and no right to a lien." The mechanic's lien statutes, however, do not condition the creation of a lien or the right to payment on the existence of a contract with the owner. We have explained that "[n]o direct contractual relation with the owner is necessary" for a person to have a lien, as long as the improvement is "made with the consent of the owner." *Karl Krahl Excavating Co. v. Goldman,* 296 Minn. 324, 327, 208 N.W.2d 719, 721 (1973); *see* Minn.Stat. § 514.01. Additionally, Minn.Stat. § 514.03 distinguishes between lien contributions that are made pursuant to contract and those that do not involve a contract. Notably, the record notice provision relied upon by the dissent applies to "a person having a contract." Minn.Stat. § 514.05, subd. 1. If a contract were a necessary precondition, the reference to a contract in this provision and the other mechanic's lien provisions would be superfluous. Therefore, we see no basis to depart from our previous interpretation of the statute.

actual notice of an existing lien that is unpaid. KKE contends that we rejected this argument in *Kirkwold Constr. Co. v. M.G.A. Constr., Inc.*, 513 N.W.2d 241 (Minn.1994). In *Kirkwold*, we were considering whether a lien claimant that had performed engineering and surveying services before actual and visible improvements had been commenced on the ground had priority over a purchaser and mortgagee under Minn.Stat. § 514.05, subd. 1. 513 N.W.2d at 242. At issue was whether "actual notice" in the statute is limited "to notice of an existing lien which may arise only with the beginning of the visible improvement on the ground." *Id.* at 244. We held in the negative, explaining that "[a] mortgagee with actual notice of an existing lien arising out of the visible improvement would already be subject to a lien because all liens would have attached with the visible improvement." *Id.* We concluded that the interest of the lien claimant had priority where the purchaser and mortgagee had actual notice of lienable services and the lien claimant had not been paid for those services. *Id.* at 245.[13] *Kirkwold* did not address the precise issue in this case—the issue of priority when the mortgagees paid the lien claimant for all known, lienable services at the time they recorded their mortgages.

Respondents also rely on *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.*, 279 Minn. 278, 284, 156 N.W.2d 748, 752 (1968), and *Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 116, 156 N.W.2d 247, 253 (1968), to argue that "actual notice" encompasses unpaid, lienable services already performed. Both *M.E. Kraft* and *Johnson*, however, were concerned with tacking; specifically, additional mechanic's lien claimants, such as electricians and lumber suppliers, were trying to tack their mechanic's lien back to the date of the first lienable services performed so that their liens had priority over mortgages that were recorded before their work was ever performed. *See M.E. Kraft*, 279 Minn. at 282, 156 N.W.2d at 751; *Johnson*, 279 Minn. at 111, 156 N.W.2d at 250. Thus, *M.E. Kraft* and *Johnson* do not answer the question before us.

Consistent with our prior case law, when there has been no actual and visible beginning of the improvement on the ground, the priority of a lien claimant and mortgagee under section 514.05, subdivision 1, depends upon whether the mortgagee had notice of an *existing* lien. *See, e.g., Jadwin*, 318 N.W.2d at 849. We conclude that an existing lien under section 514.05 contemplates past, lienable services for which a lien claimant has not been paid. *See Kirkwold*, 513 N.W.2d at 244 (explaining that purchaser and mortgagee had " 'actual notice' of the possibility that a mechanic's lien would attach" when they had actual knowledge of unpaid, lienable work); *M.E. Kraft*, 279 Minn. at 281, 156 N.W.2d at 750 (noting that mortgagee "had no knowledge that the architect had not been paid for his services"). In contrast, when a mortgagee has paid all known, outstanding invoices for lienable services at the time the mortgage is recorded, the mort-

---

**13.** KKE places great significance on certain language in *Kirkwold* to support its argument that actual notice in section 514.05 means knew or should have known about the status of payment. In discussing the district court's findings in *Kirkwold*, we noted that the district court had "found that Appellants knew that [the lien claimants] had performed lienable work, and knew or should have known that they had not been paid." 513 N.W.2d at 244. This language merely conveyed the findings of the district court. We were not interpreting the statutory language to mean "knew or should have known." As discussed, such an interpretation would contravene the plain language of the statute, which uses the specific terms "actual or record notice." Minn. Stat. § 514.05, subd. 1.

gagee does not have "actual notice" of an existing lien within the meaning of section 514.05. *See* Minn.Stat. § 514.03, subds. 1–2 (providing that where there is no contract with the owner for an agreed price, the lien "shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished"). By its very nature, a mechanic's lien exists as the result of a debt that has not been satisfied. 53 Am.Jur.2d *Mechanic's Liens* § 315 (2010) ("Since an indebtedness in favor of the claimant must exist before a valid lien claim may be made, if the debt is discharged by payment, the lien is discharged."). It does not matter whether the mortgagee is aware that future architectural services might be performed; rather, the "actual notice" requirement in section 514.05 pertains to actual notice of an existing lien—meaning lienable work that already has been performed. *Cf. Landers–Morrison–Christenson Co. v. Ambassador Holding Co.,* 171 Minn. 445, 448, 214 N.W. 503, 505 (1927) (rejecting lien claimant's argument that "without notice" means "without notice of a contemplated improvement").[14]

Respondents were aware that KKE had performed lienable work, but chose to pay KKE's outstanding invoices at the time they recorded their mortgages. The purpose of paying KKE's invoices was to obtain priority. There is nothing in Minn. Stat. § 514.05, subd. 1, which prohibits a mortgagee from paying the outstanding invoices of a lien claimant to protect its interest in the property and thereby subordinate the interest of the lien claimant as to services performed before the actual and visible beginning of the improvement on the ground. *See Home Lumber Co. v. Kopfmann Homes, Inc.,* 535 N.W.2d 302, 304 (Minn.1995) (noting that the "statutory scheme is intended to protect the prior mortgagee").[15] In this case, because the mortgagees had paid KKE's invoices and there was no actual and visible beginning of the improvement on the ground, KKE's lien did not attach against respondents. *See* Minn.Stat. § 514.05, subd. 1 (providing that "no lien shall attach" against a bona fide mortgagee without actual or record notice "prior to the actual and visible beginning of the improvement on the ground"); *cf. Lamoreaux v. Andersch,* 128 Minn. 261, 268, 150 N.W. 908, 911 (1915) (distinguishing between an owner and mortgagee as to attachment of lien for architectural services).[16] Consequently, respondents are mortgagees "without actual notice" of an unpaid lien under section

---

**14.** Similarly, it does not matter that the amount paid by respondents was less than the amount owed to KKE at the time respondents recorded their mortgages. What matters is that respondents paid all known, outstanding invoices of which they were aware at the time they recorded their mortgages. As discussed above, *supra* n. 11, section 514.05 uses the term "actual notice"; respondents did not have a duty to inquire about the amount of money owed to KKE.

**15.** The statute also gives a lien claimant the right to protect its interest. Under Minn.Stat. § 514.05, subd. 1, "a person having a contract for the furnishing of labor, skill, material, or machinery for the improvement, may file for record with the county recorder of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of the contract, which statement shall be notice of that person's lien only."

**16.** KKE argues that its lien attached upon commencement of its work, and does not "blink on and off" upon receipt of partial payment. KKE's argument misses the mark. The inquiry under Minn.Stat. § 514.05, subd. 1, however, is whether the mortgagee had actual notice of an unpaid lien. Because respondents were "without actual or record notice," KKE's lien did not attach against these mortgagees "prior to the actual and visible beginning of the improvement on the ground." *Id.*

514.05 and the mortgages have priority over the lien.

In summary, we conclude that the Legislature carved out a rule of priority in Minn.Stat. § 514.05, subd. 1, which protects the interests of bona fide purchasers, mortgagees, and encumbrancers without record notice and without actual notice of an existing, unpaid lien for services performed before the actual and visible beginning of an improvement on the ground. Here, respondents paid for all lienable services of which they had actual notice. Therefore, they were bona fide mortgagees "without actual notice" of an existing lien for architectural services and their mortgages enjoy priority over KKE's mechanic's lien.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

ANDERSON, Paul H., Justice (dissenting).

I respectfully dissent. I do so because I conclude that the court has failed to apply the plain language of Minn.Stat. § 514.05 (2008) and added language to the statute that the legislature has not seen fit to enact.

The sole issue presented on appeal is the interpretation of Minn.Stat. § 514.05, subd. 1 (2008), which in pertinent part reads as follows:

> As against a bona fide purchaser, mortgagee, or encumbrancer without *actual* or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for the improvement, may file for record with the county recorder of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of the contract, which statement shall be notice of that person's lien only.

(Emphasis added.) The question before us is what a bona fide mortgagee of real property must have "actual" notice of in order for a mechanic's lien to "attach prior to the actual and visible beginning of the improvement on the ground." *See id.*

The court acknowledges that appellant KKE Architects, Inc., could have preserved its mechanic's lien by providing record notice. Indeed, the statute is clear that KKE could have provided *record* notice of its lien by filing nothing more than "a brief statement of the nature of the contract." Minn.Stat. § 514.05, subd. 1. Had KKE filed "a brief statement of the nature of the contract," [1] the burden would have been on future purchasers, mortgagees, and encumbrancers like First Choice Bank and Darg, Bolgrean, Menk, Inc., to inquire further into KKE's claim. [2] But

---

1. According to the court, "KKE admits that there was no contract with the developer for the architectural services at issue." There may have been no *written* contract between KKE and developer JADT. But I find it incredulous to suggest that KKE invested 8,500 hours of work over the course of six years, amounting to hundreds of thousands of dollars, uninvited.

2. The court states that "[b]ecause mechanic's lien statutes contain no requirement that services be performed pursuant to a contract, the Legislature could not possibly have intended that 'actual notice' means actual notice of 'the nature of the contract.'" But Minn.Stat. § 514.01 (2008) says just the opposite—if there is no contract, there is no right to payment, and no right to a lien:

the court then proceeds to require KKE to have provided the mortgagees with *actual* notice of much more—notice of "past, lienable services for which a lien claimant has not been paid." Short of KKE having provided such notice, the court concludes that the mortgagees had no duty to inquire.

The court's interpretation of Minn.Stat. § 514.05, subd. 1, in essence adds words to the statute so it now effectively reads as follows: "As against a bona fide purchaser, mortgagee, or encumbrancer without actual *notice of past, lienable services for which the lien claimant has not been paid* or record notice *of the nature of the lien claimant's contract.*" (Additions emphasized.) What the court has done is add language to the statute that the Legislature has not seen fit to enact. Adding such language is contrary to the principles of statutory construction we have so often espoused. *See, e.g., Green Giant Co. v. Comm'r of Revenue,* 534 N.W.2d 710, 712 (Minn.1995) (in construing statutes, courts are not to supply that which the Legislature purposefully omits).

When interpreting statutes, we are to begin with the language of the statute and, if that language is plain and unambiguous, we are to follow it. *Munger v. State,* 749 N.W.2d 335, 338 (Minn.2008) (citing Minn. Stat. § 645.16 (2006)).[3] I interpret the plain language of Minn.Stat. § 514.05, subd. 1, to require KKE to have provided *actual* notice of nothing more than what it

Whoever performs engineering or land surveying services with respect to real estate, or contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, *whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner,* shall have a lien upon the improvement, and upon the land on which it is situated. . . .

(Emphasis added.) The court interprets the emphasized language to mean that no contract—whether written or oral, express or implied—is required between the mechanic's lien claimant and anyone—whether owner or the owner's agent, trustee, contractor, or subcontractor. I can do no more than reiterate my point: if there is no contract—no written, oral, express, or implied contract—between the mechanic's lien claimant and any other person or entity—not the owner, not the owner's agent, trustee, contractor, or subcontractor—then the mechanic's lien claimant has no right to payment.

The court also suggests that "[i]f a contract were a necessary precondition" to the existence of a mechanic's lien, then the reference to "contract" in section 514.05, subdivision 1, and elsewhere in chapter 514 "would be superfluous." But section 514.05, subdivision 1, provides for the preservation of the right to a mechanic's lien by the filing of "a brief statement of the nature of the contract" *prior to* the actual and visible beginning of the improvement on the ground. The whole point of the provision would therefore appear to be that a contractor or subcontractor can preserve its right to a mechanic's lien once work begins, by filing notice of nothing more than the existence of its contract *before* work begins. Indeed, before its work begins, what more could a contractor file notice of?

Finally, the court suggests that my interpretation of section 514.05 cannot stand because it is contrary to our court's interpretation of the provision "for over 80 years." But we have not been asked to interpret section 514.05 since 1982, and more importantly not since the language of the statute changed—in ways that I consider to be significant. In light of the Legislature's amendment of the statute, the length of the time between this case and our prior case law should impress no one.

3. The court takes the dissent to task for ignoring our prior case law. In doing so, the court itself ignores the fact that after those cases were decided, the Legislature changed the wording of the statute. *See N. States Power Co. v. Comm'r of Revenue,* 571 N.W.2d 573, 575–76 (Minn.1997) (when the Legislature changes the statute, courts are to presume that the Legislature intends to change the law). This is a fact I cannot ignore, and one of the reasons I dissent.

may provide *record* notice of, namely, "the nature of the contract" between it and the project owner. KKE provided the mortgagees with actual notice of the nature of its contract, and more. By doing so, KKE has complied with the plain language of the statute. Therefore, I would reverse the court of appeals and remand to the district court for reinstatement of the judgment in favor of KKE.

I respectfully dissent.