*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1779**

Bereket Hagos,
Appellant,

Seniat Gebregios,
Plaintiff,

vs.

Pond View of Woodbury Townhouse Association, et al.,
Respondents.

**Filed March 21, 2016
Affirmed
Connolly, Judge**

Washington County District Court
File No. 82-CV-13-5234

Bereket Hagos, Woodbury, Minnesota (pro se appellant)

Phaedra J. Howard, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondents)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant, a buyer of a unit in respondent townhome association, challenges the summary judgment granted to respondent dismissing appellant's claims for declaratory

judgment, slander of title, and unjust enrichment. Because we see no genuine issue of material fact precluding a summary judgment and respondent is entitled to judgment on appellant's claims as a matter of law, we affirm.

**FACTS**

In April 2006, Seniat Gebregios and appellant Bereket Hagos (Buyers)[1] purchased one of the eight units in respondent Pond View of Woodbury Townhouse Association (Pond View), a common interest community (CIC) under the Minnesota Common Interest Ownership Act, Minn. Stat. §§ 515B.1-101–515B.4-118 (2014) (requiring that a declaration be executed and recorded to create a condominium CIC). The purchase agreement included a CIC Addendum concerning the statutory requirements for disclosure statements, reserves, assessments, and warranty disclaimers.

On June 23, 2006, the declaration, as yet unsigned, was revised to remove the Woodbury Community Land Trust as a declarant because it had become insolvent and unable to complete the project, which John Duffy and Marcia Sutherland (Owners) took over. The new draft was executed and sent in for recording, and Buyers were provided with a copy before or at the closing. At the closing, they also received and signed a HUD-1 Settlement Statement indicating the charges to be paid, including a recording fee for the declaration and the charges for dues and capital contribution. Buyers began making their monthly assessment payments.

---

[1] While both buyers brought this action, only Hagos is involved in the appeal.

In the fall of 2007, Owners learned that the revised declaration they submitted in June 2006 had not been recorded because it lacked a CIC number. Buyers, their lender, and their title company told Owners that they wanted the declaration properly recorded with the deed and mortgages. Owners then revised the declaration a second time to include a CIC number, executed it, and had it recorded as document 3667473, with the deed as 3667476 and the mortgages as 3667477 and 3667478. Owners were unable to sell any of the seven remaining units. They first rented some of them out, then conveyed them to Pond View.

Buyers refinanced their first and second mortgages and obtained a new first mortgage through Associated Bank, N.A.; the new mortgage was properly recorded. In February 2011, Buyers stopped paying the monthly assessments on their property. However, they continued to demand, and Pond View continued to provide, services to the property. Buyers also continued using Pond View's easements, without which their property has no street access. Pond View sent late notices to Buyers, and they agreed to mediate the dispute. Because Buyers refused to pay the assessments, the mediation was unsuccessful.

Pond View filed an assessment lien against Buyers' property and referred the account to its attorneys for collection. Buyers were served with a notice of foreclosure, to which they did not respond. Pond View foreclosed and made the highest bid at the sheriff's sale: $9,221, which covered the debt, the legal fees, and the foreclosure costs. The sheriff's certificate of sale was recorded. Buyers redeemed the property by paying the full

3

redemption price plus the amounts that had accrued since redemption; they recorded the certificate of redemption.

Buyers, represented by counsel, then brought this lawsuit. They sought a declaratory judgment to quiet title and also moved for an order requiring respondents to refrain from cashing the redemption check and to deposit it with the court under Minn. R. Civ. P. 65, but they had not followed the procedures set out in Minn. Stat. § 580.28 to preserve their claims to money deposited with the sheriff. Respondents, who had not yet been served with the complaint or the motion, received the redemption payment from the sheriff, deposited it, and used it to pay expenses.

Respondents, after receiving the complaint, moved for summary judgment, arguing that Buyers failed to join a necessary and indispensable party, i.e., their mortgagee, Associated Bank, and to comply with statutory procedures to preserve their claims. Their motion was granted, and Buyers' claims were dismissed.

Appellant, pro se, challenges the summary judgment. Because he does not raise any specific issues, we consider whether the summary judgment was properly granted.

## D E C I S I O N

"We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted).

Appellant does not raise any genuine issues of material fact. The district court based its conclusion that there is no genuine issue of material fact impeding summary judgment

4

on its consideration of the documents Buyers filed: a memorandum opposing summary judgment, answers and amended answers to respondents' request for admissions, answers to respondents' interrogatories, and a response to respondents' requests for production of documents. There is no basis for disturbing that conclusion.

The remaining question is whether respondents were entitled to summary judgment as a matter of law. Appellant argued to the district court that respondents "could not encumber the property with the Declaration after the closing, and therefore the property is not part of the CIC"; he appears to make the same argument on appeal. But the argument is based on an inaccurate reading of the statutes.

> (10) "Common interest community" or "CIC" means . . . real estate . . . that is subject to an instrument which obligates persons owning a separately described parcel of the real estate, or occupying a part of the real estate pursuant to a proprietary lease . . . to pay for (i) real estate taxes levied against; (ii) insurance premiums payable with respect to; (iii) maintenance of; or (iv) construction, maintenance, repair or replacement of improvements located on . . . parcels or parts of the real estate other than the parcel or part that the person owns or occupies. . . .
>
> (11) "Condominium" means a common interest community in which (i) portions of the real estate are designated as units, (ii) the remainder of the real estate is designated for common ownership solely by the owners of the units, and (iii) undivided interests in the common elements are vested in the unit owners.

Minn. Stat. § 515B.1-103 (2014).

"A condominium may be created only by recording a declaration"; this is one of three means of creating a CIC. Minn. Stat. § 515B.2-101(a). The owner of the relevant real estate is to execute the declaration when it is recorded. Minn. Stat. § 515B.2-101(b).

5

But failure to comply with the recording requirement does not remove owners' obligations: "[a] project which . . . meets the definition of a 'common interest community' in Minn. Stat. § 515B.1-103(10) . . . is subject to this chapter even if this or other sections of the chapter have not been complied with, and the declarant and all unit owners are bound by all requirements and obligations of this chapter." Minn. Stat. § 515B.2-101(d). Thus, the fact that the declaration had not been recorded at the time of the 2006 closing does not void the sale or remove Buyers' duty to make the monthly assessment payments.

Appellant does not dispute that the unit described in the purchase agreement and on the deed was part of a CIC when he signed those documents. Not until after paying the condominium fees for five years and having the property foreclosed did appellant assert that it was not a condominium but rental property, and nothing in the record supports that assertion. He also offers no support for his assertion that, because the other units were rented rather than sold, he is not subject to the obligations of a buyer, i.e., paying the maintenance fees, as he agreed to do when he bought his unit.

There was no error of law in awarding respondents summary judgment and dismissing Buyers' claims.

**Affirmed.**