MINNESOTA EXPRESS, INC., et al.,
Respondent-Appellant (C6–82–1142),

v. .

TRAVELERS INSURANCE CO., et al.,
Appellants (C1–82–1095)–Respondents,

Great Central Insurance Co., Respondent-
Appellant (C5–82–1200).

Nos. C1–82–1095, C6–82–1142
and C5–82–1200.

Supreme Court of Minnesota.

May 20, 1983.

Wildfang, Rude, McIntosh & Murray, Bonner Law Offices, Opperman & Paquin, Minneapolis, for Minnesota Exp.

Hessian, McKasy & Soderberg, Thomas E. Harms and William J. Utermohlen, Minneapolis, for Travelers Ins. Co.

Rider, Bennett, Egan & Arundel, Timothy R. Thornton and Mary Mason, Minneapolis, for Great Central Ins. Co.

Hubert H. Humphrey, III, Atty. Gen., Richard G. Evans and Jolen C. Bjork, Sp. Asst. Attys. Gen., for Com'r of Ins., amicus curiae.

Broeker, Hartfeldt, Hedges & Grant, John M. Broeker, Bloomington, for Ass'n of Health Care Facilities, amicus curiae.

TODD, Justice.

The plaintiff class seeks to recover damages for alleged overpayment of workers' compensation premiums. The claim arose when the legislature determined that wages paid for vacation, holiday, or sick leave should not be included in computing compensation premiums. The plaintiffs demand that the rate in existence at the time of the legislative enactment be applied to the new wage base. The trial court denied

the summary judgment motions of both parties and certified the following questions to this court:

1. Have these plaintiffs failed to exhaust their administrative remedies under Minnesota Statutes, ch. 79, prior to commencing this action, thus depriving the trial court of jurisdiction to resolve this case?

2. Does the District Court have jurisdiction to require defendants to utilize a method for implementing Minnesota Statutes, Sec. 79.211, subd. 1, in the calculation of premium rates charged to plaintiffs, which is different from the method established by the Commissioner of Insurance under Minnesota Statutes, Sec. 79.071?

3. Did Laws of Minnesota 1979, Special Session, Chapter 3, Section 12 (Minn. Stat. § 79.211, Subd. 1) require insurers, from and after June 8, 1979, to exclude wages paid for vacation, holiday, or sick leave from the determination of workers' compensation insurance premiums?

We answer the first question in the affirmative, with instructions to dismiss.

■ 1. The statute in dispute was enacted by a Special Session of the 1979 Legislature as Section 79.211, subd. 1. Act of June 7, 1979, ch. 3, § 12, 1979 Minn. Laws 1256, 1261. It provides:

### 79.211 CERTAIN PREMIUM DETERMINATION PRACTICES.

Subdivision 1. **Certain wages excluded for rate making.** The rating association or an insurer shall not include wages paid for a vacation, holiday, or sick leave in the determination of a workers' compensation insurance premium.

The statute was effective June 8, 1979, the day after enactment. There is evidence in the record which indicates that some legislators believed this enactment would reduce premiums. Other legislators clearly indicated that premiums would not be reduced. The purpose of the legislation is to address discrepancies in the rate structure between various employers whose benefit programs are substantially different. This occurs because of the method used in computing compensation insurance rates. A premium is calculated by multiplying the wage base by a rate set by the Commissioner of Insurance which includes factors such as expenses, profits, and anticipated injury costs. The overall amount of premiums required is not affected by a decrease in payroll because the anticipated liabilities of insurers remain the same.[1]

■ The questions certified by the trial court are presented as three independent queries. There is, essentially only one question, however. Did the legislature intend Minn.Stat. § 79.211 (1982), to be implemented through the administrative process or by legislative fiat?

Minnesota Express claims that the legislature through Minn.Stat. § 79.211, subd. 1 (1982), intended to implement these changes immediately. Minnesota Express points to sections 6 and 14 of the Act which require administrative hearings before the provision takes effect. They contend that the absence of such a provision in this section indicates that these exclusions are not to be implemented through administrative proceedings.

Minnesota Express also points to the effective dates in the chapter as indicating a legislative intent that this section be immediately effective. Some sections of the chapter indicate effective dates of August 1, 1979. However, in section 12 (§ 79.211), the legislature chose June 8, 1979. This,

---

1. There is currently pending in this court an appeal from a rate making procedure commenced shortly after the passage of Minn.Stat. § 79.211. The Minnesota Workers' Compensation Insurers Rating Association requested a 28.6% rate increase. Following a six month hearing, the hearing examiner recommended a 26.8% increase. Thereafter, the Commissioner of Insurance ordered the increase be limited to 11.9%. This order was appealed to Judge Edward Mulally, Ramsey County District Court, who ruled that the order was supported by substantial evidence. *See In Matter of the Petition by the Workers' Compensation Insurers Ruling Association for Revision of the Schedule of Rates for Workers' Compensation Insurance.* Supreme Court files C9–83–190 and C2–83–371.

they contend, indicates a legislative intent to immediately implement the section.

Finally, Minnesota Express notes that subdivision 2 of § 79.211, was effective immediately and thus shows a legislative intent to do so with subdivision 1. Minnesota Express recites legislative history obtained from various tapes of committee meetings. These references are not very helpful because they fail to specifically discuss the legislature's intended method of implementation.

Minnesota Express' interpretation must be rejected because it ignores settled statutory ratemaking procedures. For example, section 79.071, subd. 1 (1982), requires that rates be adequate and section 14.63 (1982), provides for appellate review of rate making. Under these procedures, insurers are bound to observe, with limited exceptions, a uniform rate established by the Commissioner. Minn.Stat. § 79.21 (1982). Under section 79.21, only the Commissioner is empowered to modify the schedule of rates, and that power may be exercised solely through the new administrative procedures under section 79.071. From these provisions, we glean a legislative intent to implement 79.211, subd. 1, through rate making.

We also note that legislative history supports this interpretation. The heading of section 79.211—"**Certain wages excluded for rate making**"—indicates that the legislature was aware that adjustments to the wage base could not be made apart from the administrative ratemaking process. Although this court is not permitted to consider the caption as part of the statute— Minn.Stat. § 648.36 (1982)—the headings are relevant to legislative intent where they were present in the bill during the legislative process. *In re Contest of General Election on Nov. 8, 1977,* 264 N.W.2d 401, 404, n. 5 (Minn.1978). Here the caption was present continuously throughout legislative consideration.

Based upon this legislative history and the remaining provisions of chapter 79, we are satisfied that the intent of the legislature in adopting this statute was to provide a new wage base against which any rate adopted after the effective date of the statute is to be applied. To hold otherwise would be to produce an absurd result. Minn.Stat. § 645.17, subd. 1 (1982). As we have previously indicated, a change in base normally requires a change in rate. To accept the argument of Minnesota Express would permit computation of the premium on a basis that was never contemplated at the time of the adoption of the rate.

Having concluded that the old rate should not be applied to the new base, the plaintiffs are without a cause of action since they can suffer no damages. The first certified question is answered in the affirmative. We decline to answer the second and third questions because they are unnecessary to our decision. The matter is remanded to the trial court with instructions to enter a judgment of dismissal in favor of the defendants.