*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0665**

In re The Gus A. Chafoulias Revocable Trust,
dated April 28, 2005, as amended.

**Filed February 23, 2026**
**Affirmed**
**Smith, John P., Judge**[*]

Olmsted County District Court
File No. 55-CV-24-3457

Court J. Anderson, Christopher J. Burns, Benjamin J. Hamborg, Henson & Efron, P.A., Minneapolis, Minnesota; and

Barbara Podlucky Berens, Beren & Miller, P.A., Minneapolis, Minnesota (for appellant Ann M. Chafoulias)

Janel M. Dressen, Daniel R. Hall, Ryan P. Downes, Anthony Ostlund Louwagie Dressen & Boylan P.A., Minneapolis, Minnesota (for respondent Andrew C. Chafoulias)

Sheryl G. Morrison, Michael R. Cunningham, Lathrop GPM LLP, Minneapolis, Minnesota (for respondent Mayo Clinic)

        Considered and decided by Bond, Presiding Judge; Connolly, Judge; and Smith,

John P., Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SMITH**, Judge

We affirm the district court's judgment on the pleadings against the appellant because the district court did not err in interpreting that the trust provisions disinheriting appellant through a no-contest clause were triggered by her petition for declaratory relief to (1) determine the no-contest clause's validity and enforceability and to (2) determine whether moving to remove the trustee would trigger the no-contest provisions of the trust.

## FACTS

Appellant Ann M. Chafoulias appeals from a grant of judgment on the pleadings. Our factual record therefore consists of all the pleadings' allegations taken as true and any documents incorporated into the pleadings as exhibits. *Frederick v. Wallerich*, 907 N.W.2d 167, 172 (Minn. 2018).

In 2005, Gus Chafoulias created the "Gus A. Chafoulias Revocable Trust." Gus restated the trust terms in 2015, naming his son Andrew C. Chafoulias as co-trustee during Gus's lifetime, and amended the terms of the trust for a final time in 2020. Gus died in late 2020 and was survived by Andrew C. Chafoulias and his daughter Ann M. Chafoulias.

### The Trust and its Terms

Upon Gus's death, the trust converted into an irrevocable administrative trust as per Article Six. This article instructs the trustee to complete a set of administrative tasks to settle claims against Gus's estate and pay expenses before distributing the rest of the trust property. The trust's Article Three names Andrew as sole trustee of the administrative trust.

The trust names Andrew and Ann as its residual beneficiaries. The trust divides its residual property into a total of four shares based on an advantageous tax formula. Articles Nine and Ten instruct the trustee to place each share into a separate discretionary trust to provide for the beneficiary's "well-being and happiness[.]" Two of these trusts name Andrew as their beneficiary and the other two trusts name Ann, equally dividing the residue between them. Article Three names Andrew as trustee of these four discretionary trusts.

Article Three establishes certain permissions and procedures for the removal of trustees. Andrew may remove an administrative-trust trustee or a trustee of his separate discretionary trusts at any time with or without cause. Ann, however, is not given the power to remove an administrative-trust trustee and may only remove a trustee of her separate discretionary trusts so long as that trustee is not Andrew or a named successor-trustee.

Article 14, section 14.05, of the trust expresses a general preference against involving the courts in trust administration. This section directs the trustee to "administer this trust . . . with freedom from judicial intervention." It requests that "any questions or disputes" concerning the trust be resolved through mediation or arbitration and then specifies an arbitration process. Elsewhere, the trust appoints a third party as a "Trust Advisor" empowered to construe the trust's terms and settle interpretation disputes, remove trustees other than Andrew, and make limited amendments to the trust to help realize Gus's goals.

Article 16, section 16.03, of the trust is a no-contest clause. The clause reads, in relevant part:

The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased me without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:

. . .

seeks to obtain adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify, or set aside a Document or any of its provisions[.]

**This Litigation**

Following Gus's death and the beginning of Andrew's sole trusteeship, Ann became suspicious that he misappropriated trust assets and was dissatisfied in the frequency of his discretionary-trust distributions to her. Andrew's 2020 accounting of the trust's assets disclosed that he had taken almost $17 million in loans from the trust without making any repayments, and his 2021 inventory of Gus's personal property omitted various items of personal property, including gold bars and valuable artworks. Ann confronted Andrew about the missing items, but his responses were evasive. Andrew also gifted trust property to multiple nonbeneficiaries. And Andrew, as trustee of Ann's separate discretionary trusts, made only a single distribution to her between 2020 and 2024 despite Ann losing her health insurance and weathering a decline in income.

Ann filed a petition with the district court alleging that Andrew breached various trustee duties and moved to remove him as trustee for these violations. She attached the trust's 2015 restatement and 2020 amendments as exhibits. Ann then filed an amended petition replacing her demand to remove Andrew as trustee with a request for declaratory

4

relief interpreting the trust's no-contest clause and to determine whether it would be triggered by an action to remove a trustee. It specifies that Ann sought a declaratory judgment on two issues: the "validity and enforceability of the no-contest provision" in the trust and, assuming it is valid, "whether a petition by [Ann] to remove [Andrew] as trustee would trigger this provision[.]"

Andrew moved for judgment on the pleadings, arguing that both petitions triggered the no-contest clause. Andrew argued that the original petition's attempt to remove him as trustee violated portions of the trust forbidding Ann from removing a trustee of the administration trust and from removing Andrew as trustee of her discretionary trust. He also argued that the amended petition triggered the no-contest clause by seeking to nullify the no-contest clause and the trust's other provisions preventing Ann from removing Andrew as trustee.

The district court granted Andrew's motion. The district court found that the trust's no-contest clause unambiguously provides that a beneficiary who brings "a question of the validity of a provision to a judicial forum" is deemed predeceased. The district court found that Ann's request in her amended petition for a declaratory judgment on the no-contest clause's validity triggered that very clause because it initiated a judicial proceeding that could require the court to declare the clause void. The district court also rejected Ann's argument that the court should apply the probable-cause exception to no-contest-clause challenges in wills to this case on public-policy grounds. The district court also found that Ann's second request for declaratory judgment triggered the no-contest clause because it effectively sought to void the provisions preventing her from removing Andrew as trustee.

5

The district court concluded that, having triggered the no-contest clause, Ann is disinherited and no longer a trust beneficiary.

Ann appeals.

**DECISION**

Ann argues on appeal that the district court erred by interpreting the no-contest clause's condition precedent to include a request to interpret its enforceability, misconstruing her amended petition as an attempt to invalidate the clause, refusing to extend the probable-cause exception to her case, and finding her second request for declaratory relief to also trigger the no-contest clause. We address each argument in turn.

A motion for judgment on the pleadings is treated as a summary-judgment motion when a party presents evidence outside the pleadings to the district court and it does not exclude the evidence. Minn. R. Civ. P. 12.03. This is the case here, as Ann offered the restated trust and its amendments as exhibits and the district court accepted these materials. We therefore review de novo whether any genuine issues of material fact exist precluding judgment on the pleadings and whether the district court erroneously applied the law. *See Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010).

**I.**

Ann argues that the district court erred by subjecting her to the no-contest clause because it, first, misinterpreted the trust's no-contest clause's condition precedent to include any request by a beneficiary to a court to determine the validity of a trust provision and, second, erred by finding that her amended petition fulfilled this condition. This requires us to review the district court's interpretation of the trust instrument, which we do

6

de novo. *In re Stisser Grantor Tr.*, 818 N.W.2d 495, 502 (Minn. 2012). The object of trust interpretation is to determine and effectuate the grantor's intent, which must be done by reading the instrument as a whole. *Id.* If a trust's language is unambiguous, our analysis of the grantor's intent is limited to the trust's language. *In re Tr. of Lawrence B. Schwagerl Tr. Under Agreement Dated Apr. 9, 1999*, 965 N.W.2d 772, 779-80 (Minn. 2021).

We agree with the district court that the no-contest clause is triggered whenever a beneficiary presents "a question of the validity of a provision to a judicial forum[.]" The trust's language establishes that the no-contest clause is activated whenever a beneficiary "seeks to obtain adjudication in any court proceeding that [the trust] or any of its provisions is void, or otherwise seeks to void, nullify, or set aside" a provision. The plain reading of this language is that a beneficiary who initiates a court proceeding contesting the validity or enforceability of a trust provision trips the no-contest clause. The instrument as a whole affirms this reading, as it conveys Gus's intention to, in his own words, maintain the trust's "freedom from judicial intervention" through its preference for alternative-dispute-resolution procedures and appointment of a trust advisor capable of resolving these disputes out of court. As the district court's interpretation of this provision finds support in the plain text and larger context of the trust instrument, we leave it undisturbed.

Ann argues that this interpretation ignores Minnesota's preference to construe documents against enforcing forfeitures, but reading the trust differently would elevate this preference over Gus's own intentions. It is true that our courts disfavor forfeitures and will avoid interpreting a document to enforce one "when reasonably possible to do so." *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 28 (Minn. 2018). But our

ultimate objective to enforce grantor intent trumps this preference. *See Stisser*, 818 N.W.2d at 502. Where, as here, a trust's terms convey the grantor's intent to subject a beneficiary to forfeiture upon certain conditions, our reservations towards forfeitures do not justify departing from a plain reading of the instrument. *See In re Fiske's Tr.*, 65 N.W.2d 906, 910 (Minn. 1954) ("*Under all circumstances* [a trust] must be construed to carry out the main object of the settlor as disclosed by its terms[.]" (emphasis added)). We therefore decline this invitation to overstep our role.

With the district court's interpretation of the no-contest clause's condition precedent intact, we are not convinced by the second leg of Ann's argument that the district court erred by misconstruing her amended petition as fulfilling that condition. As we review this judgment on the pleadings akin to a summary-judgment decision, Minn. R. Civ. P. 12.03, we must construe all their facts and reasonable inferences in the light most favorable to Ann as the nonmoving party. *See Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 18 (Minn. 2009); *cf. Frederick*, 907 N.W.2d at 172 (explaining, in the context of a typical judgment on the pleadings, that the court must accept the complaint's facts as true and draw any reasonable inferences to favor the nonmovant). This requires reading the pleading as a whole rather than its language in isolation. *Basich v. Bd. of Pensions of Evangelical Lutheran Church in Am.*, 493 N.W.2d 293, 295 (Minn. App. 1992). We review de novo the district court's ruling that no factual questions preclude judgment on the pleadings. *See Riverview Muir Doran, LLC*, 790 N.W.2d at 170.

Ann's amended petition for declaratory relief satisfies the condition precedent of the no-contest clause because it asks the district court to determine the validity of a trust

term. There is no disputing that Ann's amended petition asks the court to make a declaratory judgment as to the validity of the no-contest clause. As the district court points out, this cannot be interpreted any way other than as a request to determine that the no-contest clause is void and would require the district court to enter a judgment invalidating the provision if so concluded. Reading her amended petition any other way would be to put form over substance. We are left to conclude that the district court did not err in applying the no-contest clause against Ann because it correctly interpreted both the clause's condition precedent and Ann's amended pleading to find that the latter satisfied the former.

## II.

Ann argues that, even if her amended petition triggers the no-contest clause, the district court erred in refusing to extend the probable-cause exception to no-contest-clause challenges applicable to Minnesota wills to trusts as either a rule of construction through Minnesota Statutes section 501C.0112 (2024) or an equitable principle through Minnesota Statutes section 501C.0106 (2024). The probable-cause exception to no-contest clauses applicable to Minnesota wills shield a beneficiary from application of an otherwise-valid no-contest clause if they have probable cause for their challenge. Minn. Stat. § 524.2-517 (2024). We note, preliminarily, that we harbor concerns that Ann forfeited these statutorily-based arguments by failing to present them to the district court, as her argument below focused on free-standing public-policy concerns. *See In re Tr. of Lawrence B. Schwagerl*, 965 N.W.2d at 783 (explaining that this court will not "consider the applicability of a statute" that the party did not present to the district court (quotation omitted)). But because

the district court analyzed one of these statutes sua sponte in its order and we do not believe these arguments suffer from their lack of lower-court briefing, we will exercise our discretion to address them on the merits. Minn. R. Civ. App. P. 103.04.

Ann's arguments as to Minnesota Statutes section 501C.0112 and Minnesota Statutes section 501C.0106 present questions of statutory interpretation that we review de novo. *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). Unambiguously worded statutes are given their plain meaning. Minn. Stat. § 645.16 (2024); *see also State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996).

Turning first to Minnesota Statutes section 501C.0112, this section provides: "The rules of construction that apply in this state to the interpretation of and disposition of property will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." The parties do not contest that if the probable-cause exception is a rule of construction that applies to wills, this statute unambiguously functions to apply it to trusts.

But the district court correctly determined that the probable-cause exception as established in *Est. of Hartz v. Cade*, 77 N.W.2d 169 (Minn. 1956), does not constitute one of the "rules of construction" under Minnesota Statutes section 501C.0112. A "rule of construction" is a synonym for a "canon of construction," which Black's Law Dictionary defines as a "rule used in construing legal instruments[.]" *Black's Law Dictionary* 254, 1600 (12th ed. 2024). The probable-cause exception as established in *Estate of Hartz* does not establish a rule for construing no-contest clauses in wills, it identifies scenarios where otherwise-valid no-contest clauses will not be given effect. 77 N.W.2d at 170-71. By way

10

of example, the *Hartz* court explained in applying the rule that "the validity of the forfeiture clause is recognized but its applicability here denied because of the finding that in the will contest respondents were motivated by good faith and had probable cause to believe the will invalid." *Id.* at 172. The probable-cause exception is unrelated to the court's interpretation of the no-contest clause and therefore does not qualify as a canon of construction for wills under Minnesota Statutes section 501C.0112.

This is reflected in the probable-cause exception's codification outside of the "Rule of Construction" parts of Minnesota's Uniform Probate Code. The legislature codified the probable-cause exception for wills in a part of the Uniform Probate Code titled "Wills" rather than in the parts titled "Rules of Construction Applicable Only to Wills," or "Rules of Construction Applicable to Wills and Other Governing Instruments." *See* Minn. Stat. § 524.2-517; Minn. Stat. § 524.2-601 (2024); Minn. Stat. § 524.2-701 (2024). Ann counters that this "mistakenly elevates statutory headings and organization" over the substance of the rule. *See* Minn. Stat. § 645.49 (2024) ("[H]eadnotes . . . are mere catchwords . . . and are not part of the statute."). But headings can lend insight on legislative intent "whe[n] they were present in the bill during the legislative process." *Minn. Express, Inc. v. Travelers Ins. Co.*, 333 N.W.2d 871, 873 (Minn. 1983). And when the legislature codified the probable-cause exception in 1994, it placed this provision in the existing "Wills" part while simultaneously creating the separate "Rules of Construction Applicable Only to Wills," and "Rules of Construction Applicable to Wills and Other Governing Instruments" parts. 1994 Minn. Laws ch. 472, §§ 47, at 406; 48, at 406; 57, at 413. As this demonstrates that the legislature consciously excluded this rule from the rules

11

of will construction, *Minn. Express, Inc.*, 333 N.W.2d at 873, it cuts further against Ann's position.

Ann's remaining arguments are not convincing. She argues that the partial codification of the probable-cause exception does not abrogate the underlying common-law rule. Though she may be correct, this argument does not work towards establishing that the probable-cause exception constitutes a rule of construction rather than a substantive rule. *See Est. of Hartz*, 77 N.W.2d at 170–71. Her argument that *Est. of Hartz* should be read as establishing a rule of construction because it describes itself as adopting a "construction" elevates dicta over the actual substance of the rule. *See id.* And while Ann presents relevant nonbinding authorities from restatements and other jurisdictions that might support extending this exception to trusts, it is not our role to extend the law. *See Tereault v. Palmer*, 413 N.W.2d 283, 285-86 (Minn. App. 1987), *rev. denied* (Minn. Dec. 18, 1987).

Ann's argument that Minnesota Statutes section 501C.0106's incorporation of "principles of equity" into the Minnesota Trust Code justifies applying the probable-cause exception to trusts on its underlying policy justifications fails for this same reason. While she presents strong arguments grounded in good authority that a probable-cause exception to no-contest clauses in trusts comports with state public policy, the decision to extend the trust code in this way is for the legislature or supreme court. *Id.* We will not, therefore, grant her an exception from the trust's no-contest clause through the authority of either statute.

## III.

Ann argues, lastly, that the district court erred by ruling that her second request for declaratory relief requesting a determination of whether petitioning to remove Andrew as trustee would activate the no-contest clause also triggered the no-contest clause. As discussed above, we review the district court's interpretation of the trust instrument and decision to award judgment on the pleadings following the admission of evidence de novo. *Stisser*, 818 N.W.2d at 502; *Riverview Muir Doran, LLC*, 790 N.W.2d at 170.

We read Ann's amended petition as an attempt to circumvent the trust provisions that establish Andrew as trustee and bar her from removing him, satisfying the no-contest-clause's condition precedent. The district court correctly reasoned that Ann's second request for declaratory relief seeks to nullify the trust provisions limiting her authority and shaping the procedure to remove Andrew as a trustee. This request, in the same manner as her first, thereby triggers the no-contest clause against Ann. Here, too, our reading is supported by the corpus of the trust instrument as it communicates in clear terms Gus's intent to establish a specific and limited procedure for removing Andrew as trustee that the amended petition seeks to spoil. *See Stisser*, 818 N.W.2d at 502. We therefore affirm the district court on this point.

**Affirmed.**